GEORGE GALLOWAY v. STATE.

[63 South. 313.]

LARCENY. *Nature and elements of offense. Criminal law.*

Where on the trial of accused for larceny the evidence showed that he took the property, openly in the daytime in the presence of witnesses under a *bona fide* claim of ownership, all the essential elements of larceny were lacking and the accused should have been discharged.

105 Miss. 57

APPEAL from the circuit court of Chickasaw county.
HON. H. K. MAHON, Judge.

George Galloway was convicted of larceny and appeals.

The facts are fully stated in the opinion of the court.

*Joe H. Ford,* for appellant.

There was an entire absence of a larcenous intent in
this case. The proof is undisputed that appellant openly
and in the daytime took the mule from the lot and pasture where McCool and McQuary had it confined, and
that in the presence of several parties, part of whom
were the wife and family of Mr. McCool himself. There
was no effort whatever on the part of appellant to conceal the mule. He carried it home along the usually
traveled road in open daylight, put it up at the home
and in the barn of a reputable citizen of Chickasaw
county where it was fed and left for the night, and that
in the presence and to the knowledge of the entire family
of the said Mr. R. L. Hoke, who is a man of irreproachable character and unquestioned integrity, culture and
refinement, the man on whose farm appellant then re
sided. The next day appellant in open daylight carried
the mule over to the barn at the settlement where he
was then living and made no effort there to conceal or
secret it. Before he went for the mule, he went to Mr.
Hoke, his white friend, and told him he wanted to borrow,
and did borrow, his mare to ride to Atlanta to get his
mule and carried a rope along for the purpose of bringing it home. He went to the store of McCool & McQuary
and told them he had come for the mule, which McCool
says he told him was not satisfactory unless a certain
Mr. Logan would pay, or would tell him he would pay,
Pete Galloway's account. When McQuary and the constable went for the mule the next day after appellant
carried it home, they found it in the stable at appellant's
home where he was at the time feeding it. All these facts

and circumstances show the entire absence of any larcenous intent, and on the plainest principles of justice and the law, he should have been acquitted.    *McDaniel* v. *State*, 8 S. & M. 401, 1 Morris State Cases 336, 47 Am. Dec. 93; *Littlejohn* v. *State*, 59 Miss. 273; *Buchanan* v. *State*, 5 South. 617; 25 Cyc. 49pj, and the great number of authorities therein cited; 2 Bishop's New Criminal Law, sec. 851.

*Frank Johnston*, assistant attorney-general, for the state.

I concede and I make the concession fully and candidly that the circumstances under which this alleged trade is said to have taken place and the circumstances under which this defendant retook, or reclaimed the possession of the mule, are circumstances to be favorably considered by the jury on the trial of the case. I am not prepared, therefore, to concede that the case should be remanded for any reversible error in the instructions of the court, but there is another question which is raised in the motion for a new trial and was also raised at the request of the defendant for a peremptory instruction and that is, whether the whole testimony, fairly considered, is sufficient to justify or warrant the jury in finding this defendant guilty of larceny.

Upon this question which is properly raised in this court and which the court. has a right to decide and the jurisdiction and authority to decide under its full statutory power to grant new trials, I will respectfully submit the case on this question for the consideration of the court, viz: That the fact appears from the evidence that the defendant did not act secretly or furtively in this matter. He went to McCool's place in the open daytime and openly and publicly walked down to his pasture, or rather rode down to his pasture, for he was mounted then on Homer Hoke's horse, and got his mule and took it home in the daytime, along the public highway, making no concealment or attempt at concealment.

I must confess that the whole body of the testimony in the case is not at all satisfactory in my mind, as indicative of any criminal intent on the part of the defendant. So far as this case is concerned, on a rigid analysis of the testimony and fairly considering both McCool's statement and the defendant's statement in regard to what occurred about this mule trade, my mind is greatly impressed with the idea that the defendant did not understand whatever may have been Mr. McCool's understanding on the point that he had made a sale of this mule to McCool & McQuary. His conduct, it does not strike me, was consistent with the idea that he knew that he had made this contract of sale and then criminally undertook to steal the mule from McCool & McQuary. Whether these facts that I have stated as to the manner of the taking of the mule are so considered by the court as substantially significant as to relieve this case from the element of criminality, I have deemed it not improper for me to give this honorable court my impression of this phase of the case.

A correct conclusion on this point can be reached only by careful consideration and analysis of the evidence as shown by the record. This I have not attempted to do, but will invite the attention of the court on this turning point in the case to the whole body of the testimony as disclosed in the record, and with these observations, I respectfully submit the case to the consideration and decision of this honorable court.

COOK, J., delivered the opinion of the court.

Appellant was convicted of the crime of larceny; the indictment charged him with stealing a mule. The state introduced evidence tending to show that the appellant, a negro, owed McCool & McQuary, a firm of merchants, a "store account;" that he sold them the mule for one hundred and twenty-five dollars, with the agreement that he was to be credited on the books with the agreed price,

and that the buyers were to send for the mule. They did send for the mule, in the absence of appellant, saying to the family of appellant that they needed the mule to haul goods from Vardaman. Appellant, after waiting a week for the merchants to return the mule, borrowed a horse from his landlord, rode over to the barn of the merchants in the daytime and, in full view of the public, tied a rope around the mule's neck and led it along the public highway to the home of his employer. Appellant testified that he had not sold the mule at all, but had merely tentatively agreed upon a price, in case he should decide to sell the mule. There were two "store accounts;" one of which was charged to appellant, the other to Pete, the brother of appellant, which last-named account the merchants say appellant said he would see was paid. It will be observed that appellant, according to his understanding, was simply recovering his own property. A careful review of all the evidence taken at the trial convinces us that the minds of the contracting parties did not meet, and, while it was the understanding of the merchants that they had bought the mule, we cannot escape the conclusion that appellant did not so understand. We reach this conclusion after giving full credit to the evidence of the state, and after assuming that the merchants complied with their part of the contract. We believe, however, that the evidence submitted to the jury did not warrant the finding that the merchants had performed their part of the contract. Waiving all consideration of whether the mule was the property of Mc-Cool & McQuary when he was taken from their barn, and granting that it was their property, we do not believe that the evidence warranted the conviction of appellant —all the essential elements of larceny or criminal trespass are absent.

*Reversed and appellant discharged.*